May it please the court, Waukeen McCoy again, representing my office in this case. Now this appeal focuses on the distribution of an earned contingency fee that my office derived from working for over five years on a case, this case, this FedEx case, with respect to seven of the plaintiffs who settled their cases. And this is almost interesting because the court just heard arguments on this matter early on. Now there is no dispute that my office had a valid contingency contract with the plaintiffs and that I was entitled to my office 40 percent of the settlements if settlements would occur. The question before the court is whether the trial court abused its discretion in taking the earned contingency fee award and distributing it arbitrarily, without following the federal rules of civil procedure, without following California law. Now, our papers allege that the court had no jurisdiction on the issue in the first place because they're all state law questions. And in fact, the court ---- We've already determined that question correct in the former rulings. Haven't we already suggested that your argument the district court lacked jurisdiction to resolve the claim? Isn't that over? Based on what we've already said. Your Honor, I think that because the issue dealt with the class action case, previous related case, the Satchel case, which I just argued, then that is proper. Because the judge has the authority there to deal with any attorney fees. So you're suggesting that there isn't precedent in those former decisions for the jurisdiction argument? Your Honor, I don't. Is that what you're saying? Yes, Your Honor. But in any event, I'm going to move on. But I would also direct the court to the excerpt of Record 187, where the trial court advised the parties, Ms. Parker and myself early on, that to the extent that plaintiffs' counsel have disputes between themselves, this is not a matter for the court to resolve and the plaintiff's statement shall not add those issues. Ms. McCoy and Ms. Parker are directed to resolve any issues through the state courts and or private mediation, which was the proper thing to do under a California case law. It is, however, important to note that even you suggest that Chambers and Huskinson are clear indications of what California law would be. Correct. So, therefore, if we have clear indication and we have funds sitting in the federal court and we have a case, 1991 case, Curry v. Del Prior, if, in fact, we haven't already said about all this, that case says we may reasonably exercise the right to do so. We may exercise jurisdiction over attorney's fees dispute that arrives from the litigation in front of us, and the law is clear, I'm having a tough time with your argument. No, Your Honor, okay, then I can move past the argument about jurisdiction, but because I think that is not really the main focus here. Okay. And I'm humbled to be here before the court today, because I work for the Ninth Circuit Court. I was a procedural motions deputy clerk before I went to law school. I worked with Judge Sneed, he gave me a recommendation for law school, Justice James Browning did so as well, and what I learned from them is that neither attorneys are above the law, and I also learned from them that judges, even though they have the power, are also not above the law. And I think that it was an abuse of discretion for this court to act in excess of its jurisdiction to take an earned contingency fee and distribute it to judgment creditors, anyone who filed a lien in the case, who didn't know the parties, who didn't even know the case, who wasn't even relevant to the matter at all. Were you given a hearing and an opportunity to brief these issues? Well, there was a hearing, Your Honor, but it wasn't for the purposes of accepting evidentiary matters at all. They didn't have a hearing, right? There was a hearing, Your Honor, but if you would have... And there was a notice? Your Honor, there wasn't a notice. And you had time to submit evidence, both before and after the hearing? Your Honor, I objected to the process throughout, and... But you did have the notice and you did have the opportunity to submit whatever you wanted, even though you were objecting? Your Honor, I did have notice, however, I wanted to put on witnesses, I wanted to be able to cross-examine, for example, Ms... Well, sometimes, I mean, I've been in your shoes before, and there have been judges who weren't going my way, but I always did submit the evidence that I wanted to submit when I was there. And I put in everything that I thought I needed to do, even though I wasn't winning on what I really wanted. And that's what I'm really after here, because it seems to me your claims are due process. And I'm trying to figure out how Judge Hylston robbed you of your due process. You had the chance to go to the hearing. You had the chance to put on whatever evidence you wanted, both pro and con. You had a chance to do whatever you wanted to do. And you did some, but not very much, in my mind. Your Honor, if you look at the transcript itself, when it... And I will turn to the question related to Coraline Young and Angela Aliota, who were both... Coraline Young was an expert witness who was hired in the case. Judge Hylston herself, before the trial, struck her from the record, saying she didn't even submit a competent opinion. Judge Hylston said her opinion was preliminary, it wasn't final, so therefore she can't testify on the case. Furthermore, my clients who actually talked to this expert witness over the phone said she went to sleep while she was talking to them over the phone, that she did not act in a reasonable way to be afforded, you know, funds for work that she did, based on those things. Now, I should have had an opportunity, in fact, she sued me in state court to adjudicate how much money she should get. But what happened was she stayed that case, she saw that Judge Hylston went south on me on a lot of different reasons in the court, there were related appeals here, and I think it all stemmed from what I talked about earlier in the Satchel case. She filed a lien in the federal case saying, oh, well, I'm owed $50,000. Well, that's fine and good, I'm fine with that. But the rules say you can't do that. You have to litigate your case in state court if an expert witness has a problem with, you know, clients paying them or myself if I contracted with them. And so here in this case, with the earned contingency fee, she then distributed $50,000 to Carlene Young, without me being able to take her deposition, conduct any discovery, cross-examining the witness, or anything like that. And so that was an abuse of discretion for her not to allow me to have a full hearing. Yes, she scheduled a hearing, but if you look at the hearing, she says, and this is in the excerpts of record 42, I don't require fact-finding, no facts needed, lien will be paid. There was no chance for me to present my side of the matter at all. She summarily adjudicated the claim. And she did this also for a judgment creditor. Now let's turn to the judgment creditor. Well, that's a state issue as well. There are rules, state rules and regulations as to how someone is supposed to collect a judgment. Well, this attorney filed a lien in a case which she didn't have any contact with the client. The client never knew Ms. Aguilera, but she filed a lien anyway. And it was accepted by the court and honored, which is an abusive process, because there are state rules that say how you're supposed to collect on a judgment. And here what Judge Ilsen did was when I earned my contingency fee, she then distributed monies to my judgment creditors without even it going to my office. That was an abuse of discretion. If that happened in every case, then the court would be clogged with people who had no interest in the case. You don't disagree, do you, with the Federal law that suggests from our circuit and the Supreme Court that when a court decides that an interplea order is available, then the court may make any other order that is appropriate and convenient for the judge to make. I don't disagree with that. Okay. And then you definitely don't otherwise disagree with the United States Supreme Court precedent that the court retains jurisdiction to resolve fee issues after judgment on the merits. Okay. And that's exactly what Judge Ilsen did in this case. Okay. Well, let me go to that issue then, Your Honor, Judge Smith. With respect to issuing the 25 percent to Cape Harbor, for example, the court is indicating that maybe the law says that that could be done. California law says you can't split a fee with a lawyer. There's no fee sharing unless there is a disclosure to the client that both the attorneys sign on saying what their fee share would be. Here, Judge Ilsen took my errant contingency fee and gave her 25 percent. What the court was supposed to do, if this was a fair hearing, is look at what work she did. In fact, look at her lodestar. Frankly, if I looked at what was in the record about what she did against what you did, I wouldn't be very much in favor of you. Okay, Your Honor, well, I disagree with you, and I can point to a quote from Judge Ilsen herself. Well, I know how Judge Ilsen came up with, now I'm going to go to the other side, and I'm going to determine whether 75-25 is a good, reasonable allocation. But I'm just saying to you, based on what you put in the record, it wasn't very good for helping Judge Ilsen. Well, Your Honor, Judge Ilsen even stated in her own order that she presided over the matter, that she knew what work I did, and she knew what work Ms. Parker did. And, in fact, that's why she gave her 25 percent, because she lost all the summary judgment motions, because she came into court confused. That's why the clients terminated Ms. Parker a year and a half before their settlements, because she was incompetent. And that's why the court indicated in her own order, she says, the court finds that Ms. Parker's lodestar is not a proper measure for the value of her work up until the time of termination, as the document reflects, many of the plaintiff's claims did not survive summary judgment, and this reflects, to a large degree, the quality of Ms. Parker's work. And she goes on to say that, you know, she just goes on to say that because of my successful verdicts that I did, and the work that I did in the case, that my firm should get 75 percent of the contingency fee, and hers and Ms. Parker should get 25 percent of the contingency fee. She truly did compliment you. She said, in essence, the hours, of course, are on Parker's side. But I'm not going to give Parker, especially based on the hours and amount that exceeds the total fee, the primary result is on McCoy's side. McCoy produced the result. He litigated a couple of the cases and was successful, and that turned it around for everybody else. So she gave you. And I appreciate that compliment. She complimented me throughout the whole trial, even up until the time I tried to apply for my fee. She said that she'd never been to the punitive damages phase in any case while she sat on the bench. So she gave me compliments. It was in fact on that basis that she discounted the hourly rate and or the hours for Parker. Well, the problem is the controlling law says that you can't share a fee without disclosure to the client. She gave a percentage share of the fee to Ms. Parker, and that is what was an abuse of discretion. I'm not saying she couldn't look at her hours and see what she did. I'm saying that the way she derived her fee, she just pulled it out of the air and said 25%. I think it should have been less than that based on the work she did, but I think that she should have looked at her load store, looked at what the benefit was to the clients who settled their cases, and also derived testimony from the clients. One client testified in the evidentiary hearing that they saw Parker three times only in the whole five years. So she didn't allow that testimony to develop, and therefore, it violated my due process rights for that not to occur in that evidentiary hearing. It wasn't an evidentiary hearing at all. And again, I think it was based on my raising the issue. Your Honor said what am I saying was misconduct in the Satchel case, but I'm just saying everything went south at that point in time. And I think that the Court has the facts, and I'm done with my argument. Your Honors, thank you for listening. Thanks, Mr. McCoy. Good morning, Your Honors. May it please the Court. My name is Kenneth Walczak, and I represent Ms. Parker in her cross appeal today. I'm going to take 10 minutes, if I can, and try to reserve five for Mr. Funk. As Mr. Galvin argued at the beginning of this morning, the district court erred as a matter of law back in January of 2009 when it limited Ms. Parker to a recovery in quantum meruit rather than awarding her a compensable fee hot fee from the defendant FedEx. So Ms. Parker's cross appeal here can be resolved by reversing this district court's original legal error such that if Ms. Parker wins on her direct appeal, this case may be moot. And to clear up an apparent misunderstanding from earlier, Ms. Parker has not actually received any statutory fees to date. I'd also like to begin by addressing a couple of things that Mr. McCoy mentioned. He has a point to make about Rule 2200 and division of fees between attorneys. The Chambers v. K and Huskinson and Brown cases that Mr. McCoy cites are directly contrary to his point. They both assume that a client can get quantum meruit or rather, sorry, an attorney, a discharged attorney, can get quantum meruit out of the recovery. And the Huskinson and Brown case extends the holding of Chambers a little bit further to say that an attorney can get quantum meruit from her former co-counsel. So those cases are directly contrary to what Mr. McCoy said. But I do agree with Mr. McCoy in one respect. We certainly agree that the Court abused its discretion by failing to look at the lodestar, actually committed a legal error reviewable de novo by failing to look at Ms. Parker's lodestar. So a proper award would have been based on the lodestar calculation. Is that true even for a quantum meruit award? It is absolutely true, Your Honor. The Serrano 3 case from the California Supreme Court says the lodestar is the starting point of every fee award. And if you look at the Salton Bay case that we cited for a somewhat smaller point, Salton Bay says, looking back at Serrano 3, that the California Supreme Court really meant it when they said every fee award. And if we interpret that rule as you suggest, where is the leeway that should be given, I would suggest certainly Mr. McCoy's arguing, to Judge Elston's conclusion that the major result, the result is very important in the calculation. And where is the discretion to the district judge to bring that factor into play? It's not hourly. But clearly the judge recognized, as is undoubtedly the case, that Mr. McCoy produced the major benefit and the major result. How do we discount, other than a broad statement, a broad finding, is she supposed to go through hour by hour and say, now, here's the lodestar first, but here's hour by hour how I address each of them under the major factor that McCoy produced the result? I would say essentially, Your Honor, the answer to your question is yes. The judge must identify specific factors that are unreasonable. There you go. Okay. So hour by hour, in order to factor in that greater result, she needs to make a conclusion hour by hour, the hourly rates that are applicable in light of that factor. Essentially, I would say yes. But the line of decisions begins with Hensley v. Eckerhart and continues through Gates v. Duke Mason in this Court from 1992. And the standard is a concise but clear explanation of the Court's reasoning. So as the Court said here in Moreno v. The City of Sacramento in 2008, where the difference between the lawyer's request and the Court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the Court's reasoning is expected. Well, but in Cesaro, and I'm not sure I say this right, Cazares, it seems to me that Cazares is a quantum Merowit action. It is a situation where we have competing claims. And there, it seems to me, the California Court says that the Court may use a pro rata approach. And pro rata approach is exactly what the judge did here. She had in front of her a fee provision, or fees, great number of fees on behalf of your client, not so much a good explanation of what had happened on the other side as to our fees. And then she had to have all of it, even though she had that. Then what Cazares says is the pro rata calculation is just similar, somewhat similar to the lodestar. So it seems to me that Judge Hilston, having what you had in front of him and what counsel provided, which was not, as I've already said, not what I would have provided, but at that point she had to make some kind of a determination. She didn't have to put a multiplier to it if she follows Cazares. She doesn't have to say, well, this is bad, and I'll put a negative multiplier, and this is good, and I'll put another multiplier, but instead make a pro rata distribution. What she did, what she said, in effect, without using a multiplier, hey, I'm making a pro rata distribution. I think one did one thing, one did another. I saw what they did. I've seen them in front of my courthouse. They're here. One loses on summary judgment, all kinds of claims. One took it to the jury. I think this is a good pro rata approach. Why does that not satisfy the California court? Thank you, Your Honor. If I may, I'll respond in two parts. All right. Firstly, I think that Cazares is not to the contrary of the bedrock cases on the pro rata approach in quantum merit cases, and those are DiLoretto and Spires. And DiLoretto and Spires say that the quantum merit division must be done, quote, in proportion to the time spent on the case by each attorney, end quote. So it has to begin with a calculation of the amount of time spent by each, and the failure to do that calculation at all was an abuse of discretion by this Court. And the other way I would respond is just to say that, of course, Mr. McCoy's default in not presenting any evidence of his lodestar put the Court in a very difficult position. The problem is that the burden of Mr. McCoy's failure to submit was placed on Ms. Parker, who did not get the credit for her lodestar, did not get an opportunity to benefit from the things that the Court said about her work, including the fact that she was there every day filing motion after motion and appearing in front of the judge.   The Court's factual findings are consistent with the fact that Mr. McCoy was absent and during heavy litigation bearing the brunt of this litigation. The Court's factual findings just don't match up with its legal conclusions, which is also in itself a reversible error in this Court. I would also agree that this is an abuse of discretion standard here. I would agree about Hathaway, Your Honor. I would say that it's a legal error not to consider the lodestar, but it was an abuse of discretion to distribute funds. So you're suggesting one has to exactly apply the lodestar in every situation not to have an abuse of discretion, even with Cesaris? What I'm saying, Your Honor, is that the Court had to go at least as far as the Court did in Furland v. Conrad Credit Court, which is the Ninth Circuit case from 2001, in which the district court actually went a little bit farther towards a lodestar analysis than this Court did, I'm sorry, than our district court did, and yet this Court, the Ninth Circuit, reversed, because at the end, after reciting the lodestar standard, the district court just announced a bottom line number of compensable hours with, quote, no attempt to calibrate the number chosen to demonstrable inefficiency in carrying out particular tasks. And that's exactly where the district court failed here. It didn't attempt to calibrate the number of hours chosen or even choose the number of hours to reflect inefficiency or otherwise. You know, Judge Yeltsin has lived with this case for a long time, a lot longer than she would like to have lived with it and a lot longer than I think she should have been required to live with it, largely because of the fee disputes that you attorneys are having. Do you really think that if we were to say, you know, you were supposed to do the lodestar calculation first and only then come up with a percentage, that she would come up with a different number than 2575? I would like the opportunity to argue that in front of her, Your Honor. I think that remanding it to her to give us an opportunity to have correct criteria instead of incorrect criteria and the proper legal standard could result in a different result. I think that this Court sent back the issue of the sanctions against Mr. McCoy to Judge Yeltsin. Very unhappily and unwillingly, but we did. And he received a different result. He's now filing a new petition in front of her. And so, you know, I think that she altered her legal conclusions there, and I think that given an opportunity to apply the correct standard, we would trust her to come up with the correct result here as well. I think that was the same in the Gates v. Duke Mazin case. That was a class action that had been going on for some time and had been up and down to the various courts. And in that case, this Court remanded, reversed and remanded at Stage 6 or 7 of the proceedings. Well, you made a good argument for us not sending these cases back to redo and recalculate and give further explanation. Often we come up with the same result. The judge just provides further support. And I think you've made a pretty good argument why we should not reverse these types of cases generally. Because they tend to continue on at that point, or? Because the judge, in essence, we're telling the judge, just give us more detail, give us more explanation. If clearly the judge hasn't given us any rationale, we need to send it back. We've got to get further explanation. But you've given a pretty good argument, I think, for if we can discern from the record the rationale and reason and analysis, even if it's not detailed line by line, we ought not to be sending it back. I'm sorry for giving you that impression. I think it's very difficult from this record to discern the rationale and reason and analysis. I think that this is very much within the line of cases that includes Furland and includes Moreno in which the judges made a recitation of the lodestar standard but then didn't issue findings of the correct hours, didn't issue findings on specific items or tasks or demonstrable inefficiency in tasks performed. I think that this case is right in line with those. And, in fact, Judge Olson did not go as far as some of the other judges that were reversed and remanded. And I think that our client has the right to present her lodestar and get an award that's based on that amount, whether it results in a different outcome. You know, I'm very reluctant to precipitate a fee dispute between you and your fellow counsel here. You're into his time. I understand that, and I look forward to it. Thank you. He said he wanted to save five minutes for you. Thank you very much. We'll give you five minutes. Hopefully I don't use the whole time. If it pleases the Court, my name is Bruce Funk. I'm here on behalf of Carlene Young, who was a lien holder in this matter and was retained to provide expert services. Getting right to the due process issue, as the Court noted, notice was given. The parties were required to brief the issues, present evidence by way of declarations and documents. Ms. Young did that. At the hearing, Mr. McCoy was represented by counsel. There was, on the record, there was no objection to Judge Ilson's finding that Ms. Young had prevailed. She was there in court, able to be cross-examined if there had been an objection. There was none. They went right into the fee dispute. And so there was more than due process given. If they had underlying questions, they could have provided declarations by the plaintiffs, declarations by Mr. McCoy himself. And if the judge then deemed an evidentiary hearing needed, that would have happened. And it would have happened that day, I think, if Mr. McCoy's counsel had objected and said, I want to cross-examine Ms. Young on these issues. I think it's important, Judge, that you know these issues. They did not object at all. Secondly, and I know the Court's pretty much, or at least indicated about the jurisdictional issue, the contract itself had a provision for filing a lien on the case. The case was in Federal court. All parties, including Ms. Young, agreed to the interpleader process to resolve those issues. And once the funds were interpleaded, then we made our motion for the Court to enforce the lien provisions of the contract. And, therefore, the Court has jurisdiction to resolve that issue. Unless there's any other questions, I'll submit it. No fisticuffs between you and counsel afterwards. You got equal time, right? No problem. Thank you very much. Thank you. All right. Mr. McCoy, you did save some time. I'd just like to say that the Court indicated that Judge Ilsen did the percentage share to Ms. Parker on a pro rata basis. However, there's nowhere in the order that she says that. There's no indication of that. Furthermore, if the Court looks at the record, Kim McKenzie Parker does not have a contract with the clients. There is no documentation which shows that she has a contract with either one of these settled plaintiffs. The contract was with my office and Kale Davis. Ms. Parker, what she was trying to do is substitute herself into that agreement, which fails, because as an attorney she's supposed to have her own contract with the client. The addendums didn't work because not only did I not sign, Ms. Parker didn't even sign. And, again, 2200 precludes a percentage share of the case being given, a percentage share of the contingency fee being given to an attorney without the disclosure from the client. Submit it. Okay. Thank you. Two cases, 10-15057, 10-15137, now submitted for decision. Thank you very much.
judges: Jones, Fletcher W. , Smith N. R.